IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK19-41937 |
| | ) | CHAPTER 7 |
| BRIAN C PODWINSKI, | ) | |
| | ) | |
| Debtor. | ) | |

**DECLARATION OF BRIAN C PODWINSKI IN SUPPORT OF MOTION TO AVOID
LIEN OF CHARLES S TOMEK**

I, Brian C. Podwinski, in support of my Motion to Avoid Lien of Charles S. Tomek declare
as follows:

1.    I filed my Chapter 7 proceeding on November 21, 2019.

2.    I filed by bankruptcy as a result of the closing of Blue Blood Brewing Co., Inc.,
which was operating a restaurant and brewery in Lincoln, Nebraska from 2011 until
May of 2019.

3.    I served as president of Blue Blood Brewing Co., Inc. during its existence.

4.    Blue Blood Brewing Co., Inc. had a decline in profits beginning in 2018, which it
was not able to recover from and its doors were shut by its landlord in May, 2019.

5.    I held 430 shares of Blue Blood common stock out of 1,025 shares outstanding on
the date of my bankruptcy.

6.    I was completely emotionally and financially invested in Blue Blood.

7.    I did everything I could to attempt to save my business, but ultimately, I could not.

8.    I took out a loans to meet payroll and other obligations when revenues were down.
Much of the loans I took out required personal guarantees.

9.    One such loan was from Charles S. Tomek, which I personally guaranteed.

10.    Tomek filed suit in Lancaster County for breach of the loan agreement and obtained
a judicial lien on my residence in case No. CI19-1765.

11.    My residence's value, as stated in my schedules, and as determined by the Lancaster
County Assessor is:  $638,800.00.  See attached *Exhibit F*.  The basement of my

Page 1 of  2

home has cracks and is uneven to the extent that some doors do not shut.  Thus, I do not believe the fair market value of my home is more than assessed due to the issues of the basement floor.

12.     Liens which exist on my residence on the date of petition that I can not and am not seeking avoidance of are as follows:

| | |
|---|---|
| Citizens One Home Loan | $445,234.88 |
| Frontier Bank | $142,022.70 |
| Ironwood Builders | $41,000.00 |
| Copperwood Capital | $30,000.00 |

13.     To my knowledge, all the above liens that I can not avoid on my residence are consensual, and properly perfected and were properly perfected on the date of my bankruptcy.  *See e.g. Exhibit A-E.*

14.     Citizens One Home Loan is a mortgage originated with Frontier Bank.  Attached as *Exhib*it B is a past and current statement as well as deeds of trust from Frontier.

15.     Attached as *Exhibit C* are true and correct copies of my mortgage balance as of petition date and current mortgage balance with Citizens One Home Loans.

16.     Attached as *Exhibit D* is an email my attorney received in obtaining a current balance of the Copperwood Capital loan as well as deeds of trust perfecting the lien upon my residence by Copperwood Capital.

17.     Attached as *Exhibit E* is a true and correct copy of the construction lien, as recorded by Ironwood Builders, LLC, which is the remainder on my construction costs in amount of $46,509.41.  I am uncertain of the exact present balance, but the amount owed to Ironwood Builders on the date of petition was approximately $41,000.00.

I declare under penalty of perjury that the foregoing is true and correct.  (Declaration per 28 U.S.C. § 1746).

Dated: 6/26/2020 _____

*Brian C. Podwinski*
DocuSigned by:
CD329F88D805403...
Brian C. Podwinski

EXHIBIT _A_

You searched for: FilingDate >= Tue Jan 01 00:00:00 CST 1901 and <= Fri Jun 19 00:00:00 CDT 2020 and Subdivision=SORIAC and Block=3 and Lot=4

**16 items found, displaying all items.1**

| Description | Summary | | | | | | Add All to My Images |
|---|---|---|---|---|---|---|---|
| Plat 2017034369 | Thu Aug 17 10:20:16 CDT 2017<br>Grantor: BAADE PROPERTY LLC ETAL,   Grantee: SOUTH RIDGE ACRES<br>UNION BANK & TRUST COMPANY ETAL   ADDITION<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 1 Lot 1, ... | | | | | | View ImageAdd to My Images |
| | | NE | NW | SW | SE | Lot: 4 | |
| | Sec: 15 Twn: 8 Rng: 7 | . . | . . . | . . . | . . . . P  P  P  P | | |
| | ; ..., ...<br>CODE:SORIAC;#5479;OUT OF:L4,22,23 SE1/4 15-8-7;CREATES:L1... | | | | | | |
| Restrictive Covenant 2017034404 | Thu Aug 17 11:28:24 CDT 2017<br>Grantor: BAADE PROPERTY LLC        Grantee: TO THE PUBLIC<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 1 Lot 1, ...<br><br>WOP | | | | | | View ImageAdd to My Images |
| Warranty Deed 2017045490 | Fri Oct 27 14:52:42 CDT 2017<br>Grantor: BAADE PROPERTY LLC        Grantee: PODWINSKI BRIAN & SP<br>AMANDA, PODWINSKI AMANDA & SP<br>BRIAN<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4<br><br>JT $276.75 | | | | | | View ImageAdd to My Images |
| Deed of Trust 2017045491 | Fri Oct 27 14:52:42 CDT 2017<br>Grantor: PODWINSKI BRIAN AKA & WF,  Grantee: FRONTIER BANK<br>PODWINSKI BRIAN C AKA & WF,<br>PODWINSKI AMANDA AKA & HSB,<br>PODWINSKI AMANDA D FKA & HSB,<br>EKBERG AMANDA D NKA & HSB<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4, ...<br>WOP FA$1,500,000.00 $750,000.00 | | | | | | View ImageAdd to My Images |
| Notice of Commencement 2017045492 | Fri Oct 27 14:52:42 CDT 2017<br>Grantor: PODWINSKI BRIAN ETAL,       Grantee: AS TO COMMENCEMENT<br>PODWINSKI AMANDA ETAL<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4<br><br>12 MONTHS | | | | | | View ImageAdd to My Images |
| Deed of Trust 2018031965 | Tue Aug 14 15:12:25 CDT 2018<br>Grantor: PODWINSKI AMANDA & HSB    Grantee: FRONTIER BANK<br>BRIAN, PODWINSKI BRIAN & WF<br>AMANDA<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4<br>$453,100.00 | | | | | | View ImageAdd to My Images |
| Deed of Trust 2018031966 | Tue Aug 14 15:12:25 CDT 2018<br>Grantor: PODWINSKI AMANDA & WF    Grantee: FRONTIER BANK<br>BRIAN, PODWINSKI BRIAN & WF<br>AMANDA<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4<br>FA $293,800.00 $146,900.00 | | | | | | View ImageAdd to My Images |
| Request for Notice 2018033966 | Tue Aug 28 12:36:32 CDT 2018<br>Grantor: FRONTIER BANK            Grantee: FRONTIER BANK<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4 | | | | | | View ImageAdd to My Images |

EXHIBIT _B_

| Description | Summary | | Add All to My Images |
|---|---|---|---|
| Deed of Reconveyance 2018035104 | 2018-031965<br>Wed Sep 05 14:27:42 CDT 2018<br>**Grantor: FRONTIER BANK**<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4 | **Grantee: PODWINSKI BRIAN AKA & WF, PODWINSKI BRIAN C AKA & WF, PODWINSKI AMANDA AKA & HSB, PODWINSKI AMANDA D AKA & HSB** | View ImageAdd to My Images |
| Partial Reconveyance 2018036382 | 2017-045491<br>Thu Sep 13 13:04:53 CDT 2018<br>**Grantor: UNION BANK & TRUST COMPANY**<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4 | **Grantee: BAADE PROPERTY LLC** | View ImageAdd to My Images |
| Construction Lien 2018047468 | 2016-055308<br>Fri Nov 30 14:25:06 CST 2018<br>**Grantor: IRONWOOD BUILDERS LLC**<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4<br>$46,509.41 | **Grantee: PODWINSKI BRIAN ETAL, PODWINSKI AMANDA ETAL** | View ImageAdd to My Images |
| Deed of Trust 2019003067 | Wed Jan 30 11:15:13 CST 2019<br>**Grantor: PODWINSKI BRIAN & WF AMANDA ETAL, PODWINSKI AMANDA & HSB BRIAN ETAL, BLUE BLOOD BREWING COMPANY INC ETAL**<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4<br>$350,000.00 | **Grantee: COPPERWOOD CAPITAL LLC** | View ImageAdd to My Images |
| Deed of Trust 2019003073 | Wed Jan 30 11:26:33 CST 2019<br>**Grantor: PODWINSKI BRIAN & WF AMANDA ETAL, PODWINSKI AMANDA & HSB BRIAN ETAL, BLUE BLOOD BREWING COMPANY INC ETAL**<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4<br>$350,000.00 | **Grantee: COPPERWOOD CAPITAL LLC** | View ImageAdd to My Images |
| Order 2019023407 | Mon Jul 01 13:02:34 CDT 2019<br>**Grantor: KENT SUPERIOR COURT**<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4 | **Grantee: PONTE INVESTMENTS LLC ETAL, PODWINSKI BRIAN C ETAL** | View ImageAdd to My Images |
| Request for Notice 2019033036 | Wed Aug 28 14:56:38 CDT 2019<br>**Grantor: IRONWOOD BUILDERS LLC**<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4 | **Grantee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ETAL, FRONTIER BANK ETAL, COPPERWOOD CAPITAL LLC ETAL** | View ImageAdd to My Images |
| Notice 2020021650 | 2018-031965, 2018-031966, 2019-003067, 2019-003073<br>Tue May 19 10:54:33 CDT 2020<br>**Grantor: U S BANKRUPTCY COURT**<br>Subdivision SOUTH RIDGE ACRES ADDITION Block 3 Lot 4 | **Grantee: PODWINSKI BRIAN C** | View ImageAdd to My Images |

16 items found, displaying all items.1

New SearchModify SearchPrintable Version

6/25/2020, 11:56 AM


EXHIBIT

```
521    040 01 01032          Page:    1
Loan:              〰〰〰3855  09/30/2019
```

AMANDA D PODWINSKI
15600 S 76TH ST
ROCA NE  68430-9805

                    * A u t o m a t i c   L o a n   P a y m e n t *

| CONSUMER REAL ESTATE | | Maturity Date: | 08/13/2023 |
|---|---|---|---|
| Principal Balance: | 142,022.70 | Current Rate: | 5.000000 |
| Interest Thru 09/30/2019: | 350.19 | Interest Paid 2019: | 5,404.25 |
| One Day's Interest: | 19.45 | Original Loan Date: | 08/13/2018 |
| Amount Past Due: | .00 | Original Loan Amount: | 146,900.00 |
| Escrow Balance: | .00 | Date of Last Payment: | 09/13/2019 |
| | | Last Payment Amount: | 1,000.00 |

Collateral/Property: 15600 S 76TH ST ROCA NE 68430

```
                    Date Payment Due:           10/13/2019
                    Principal Due:                 386.13
                    Interest Due:                  583.65

                    Total Amount:                  969.78
```

        * As you requested, 1,000.00 will be charged to Checking
          Account 00000401002l271 on 10/15/19 *


EXHIBIT

Print

| CONSUMER REAL ESTATE 4001003855 | FRONTIER BANK | 6/26/2020 2:17:52 PM |
|---|---|---|
| Printed by: AMY KRAFKA | | Reporting Institution: 21 |

## Note 4001003855 - AMANDA D PODWINSKI

| | Relationship | Date of Birth | Phone Number | Tax Identification |
|---|---|---|---|---|
| ⊕ AMANDA D PODWINSKI | 🏠 Owner/Signer | *** **, **** | ********** | SSN ***-**-**** |

🏠 15600 S 76TH ST
ROCA NE 68430-9805

Additional Relationships
Tax Name: AMANDA D PODWINSKI
See Mailing Information

### Mailing Label
AMANDA D PODWINSKI              eStatement:              adepodwinski@gmail.com
15600 S 76TH ST
ROCA NE 68430-9805

### Presentments
No Presentments for Account

### 2020

| Date | Description | Transaction Amount | Principal: | Interest: | Principal Balance |
|---|---|---|---|---|---|
| Jan 13, 2020 | PAYMENT FROM PERSONAL CHECKING ACCOUNT 4010021271 | $1,000.00 | $402.14 | $597.86 | $140,386.12 |
| Feb 13, 2020 | PAYMENT FROM PERSONAL CHECKING ACCOUNT 4010021271 | $1,000.00 | $403.84 | $596.16 | $139,982.28 |
| Mar 13, 2020 | PAYMENT FROM PERSONAL CHECKING ACCOUNT 4010021271 | $1,000.00 | $443.91 | $556.09 | $139,538.37 |
| Apr 13, 2020 | PAYMENT FROM PERSONAL CHECKING ACCOUNT 4010021271 | $1,000.00 | $407.44 | $592.56 | $139,130.93 |
| May 13, 2020 | PAYMENT FROM PERSONAL CHECKING ACCOUNT 4010021271 | $1,000.00 | $428.23 | $571.77 | $138,702.70 |
| Jun 15, 2020 | PAYMENT FROM PERSONAL CHECKING ACCOUNT 4010021271 | $1,000.00 | $372.99 | $627.01 | $138,329.71 |

```
Inst # 2018031966  Tue Aug 14 15:12:25 CDT 2018
Filing Fee: $62.00                        opodal
Lancaster County, NE Assessor/Register of Deeds Office  DTRUST
                                          Pages 8
```

**WHEN RECORDED MAIL TO:**
   Frontier Bank
   8380 GlynOaks Dr.
   Lincoln, NE 68516                                        FOR RECORDER'S USE ONLY

# DEED OF TRUST

THIS DEED OF TRUST is dated August 8, 2018, among Amanda Podwinski and Brian Podwinski, wife and husband, whose address is 15600 S 76th St, Roca, NE 68430 ("Trustor"); Frontier Bank, whose address is Lincoln Branch, 8380 GlynOaks Dr., Lincoln, NE 68516 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Frontier Bank, whose address is 8380 GlynOaks Dr., Lincoln, NE 68516 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor conveys to Trustee in trust, WITH POWER OF SALE, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Lancaster County, State of Nebraska:

Lot Four (4), Block Three (3), South Ridge Acres Addition, Lancaster County, Nebraska

The Real Property or its address is commonly known as 15600 S 76th St, Roca, NE 68430. The Real Property tax identification number is 15-15-403-004-000.

FUTURE ADVANCES. In addition to the Note, this Deed of Trust secures all future advances made by Lender to Borrower whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Deed of Trust secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower, together with all interest thereon; however, in no event shall such future advances (excluding interest) exceed in the aggregate $293,800.00.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES. Trustor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

TRUSTOR'S WAIVERS. Trustor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Trustor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

   Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

   Duty to Maintain. Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

   Compliance With Environmental Laws. Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or

**DEED OF TRUST**
(Continued)

Loan No: 4001003855                                                                                          Page 2

threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously
disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other
authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous
Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with
all applicable federal, state, and local laws, regulations and ordinances, including without limitation all
Environmental Laws.    Trustor authorizes Lender and its agents to enter upon the Property to make such
inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the
Property with this section of the Deed of Trust.  Any inspections or tests made by Lender shall be for Lender's
purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or
to any other person.  The representations and warranties contained herein are based on Trustor's due diligence in
investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims
against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under
any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses,
liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from
a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage,
disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or
not the same was or should have been known to Trustor.  The provisions of this section of the Deed of Trust,
including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction
and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest
in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any
stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the
foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including
oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Trustor shall not demolish or remove any improvements from the Real Property without
Lender's prior written consent.  As a condition to the removal of any improvements, Lender may require Trustor to
make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal
value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all
reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's
compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.**  Trustor shall promptly comply with all laws, ordinances, and
regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the
Property.  Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during
any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so
and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require
Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Trustor agrees neither to abandon or leave unattended the Property.  Trustor shall do all other
acts, in addition to those acts set forth above in this section, which from the character and use of the Property are
reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums
secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the
Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any
right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary;
whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a
term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in
or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real
Property.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by
Nebraska law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Deed of
Trust:

**Payment.**  Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments,
charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall
pay when due all claims for work done on or for services rendered or material furnished to the Property.  Trustor
shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of
Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to
below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.**  Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith
dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or
is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed,
within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by
Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an
amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a
result of a foreclosure or sale under the lien.  In any contest, Trustor shall defend itself and Lender and shall satisfy
any adverse judgment before enforcement against the Property.  Trustor shall name Lender as an additional obligee
under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes
or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written
statement of the taxes and assessments against the Property.

**Notice of Construction.**  Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any
services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or
other lien could be asserted on account of the work, services, or materials.  Trustor will upon request of Lender
furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such
improvements.

**PROPERTY DAMAGE INSURANCE.**  The following provisions relating to insuring the Property are a part of this Deed of
Trust.

**Maintenance of Insurance.**  Trustor shall procure and maintain policies of fire insurance with standard extended
coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real
Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee
clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require.
Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a
company or companies reasonably acceptable to Lender.  Trustor, upon request of Lender, will deliver to Lender
from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that
coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender.  Each

**DEED OF TRUST**

Loan No: 4001003855 | **(Continued)** | Page 3

insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation to Citizens Bank, N.A.. The existing obligation has a current principal balance of approximately $453,100.00 and is in the original principal amount of $453,100.00. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**DEED OF TRUST**
Loan No: 4001003855 | (Continued) | Page 4

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the Indebtedness, including without limitation all future advances, when due, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

**EVENTS OF DEFAULT.** At Lender's option, Trustor will be in default under this Deed of Trust if any of the following happen:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Borrower or Trustor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Deed of Trust or in any agreement related to this Deed of Trust.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Trustor, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of

**DEED OF TRUST**

Loan No: 4001003855           **(Continued)**           Page 5

creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Borrower's or Trustor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Borrower's or Trustor's accounts with Lender. However, if Borrower or Trustor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Borrower or Trustor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision shall not apply.

**Breach of Other Agreement.** Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment, is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

    **Acceleration Upon Default; Additional Remedies.** If any Event of Default occurs as per the terms of the Note secured hereby, Lender may declare all Indebtedness secured by this Deed of Trust to be due and payable and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind. Thereafter, Lender may:

        (a) Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, or part of the Property or interest in the Property; increase the income from the Property or protect the security of the Property; and, with or without taking possession of the Property, sue for or otherwise collect the rents, issues and profits of the Property, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection attorneys' fees, to any indebtedness secured by this Deed of Trust, all in such order as Lender may determine. The entering upon and taking possession of the Property, the collection of such rents, issues and profits, and the application thereof shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done in response to such default or pursuant to such notice of default; and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Lender shall be entitled to exercise every right provided for in the Note or the Related Documents or by law upon the occurrence of any event of default, including the right to exercise the power of sale;

        (b) Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver or specifically enforce any of the covenants hereof; and

        (c) Deliver to Trustee a written declaration of default and demand for sale and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee shall cause to be duly filed for record in the appropriate offices of the County in which the Property is located; and

        (d) With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Nebraska Uniform Commercial Code.

    **Foreclosure by Power of Sale.** If Lender elects to foreclose by exercise of the Power of Sale herein contained, Lender shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note and such receipts and evidence of expenditures made and secured by this Deed of Trust as Trustee may require.

        (a) Upon receipt of such notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such Notice of Default and Notice of Sale as then required by law and by this Deed of Trust. Trustee shall, without demand on Trustor, after such time as may then be required by law and after recordation of such Notice of Default and after Notice of Sale having been given as required by law, sell the Property at the time and place of sale fixed by it in such Notice of Sale, either as a whole, or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including without limitation Trustor, Trustee, or Lender, may purchase at such sale.

        (b) As may be permitted by law, after deducting all costs, fees and expenses of Trustee and of this Trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of (i) all sums expended under the terms of this Deed of Trust or under the terms of the Note not then repaid, including but not limited to accrued interest and late charges, (ii) all other sums then secured hereby, and (iii) the remainder, if any, to the person or persons legally entitled thereto.

        (c) Trustee may in the manner provided by law postpone sale of all or any portion of the Property.

    **Remedies Not Exclusive.** Trustee and Lender, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligations secured by this Deed of Trust and to exercise all rights and powers under this Deed of Trust, under the Note, under any of the Related Documents, or under any other agreement or any laws now or hereafter in force; notwithstanding, some or all of such indebtedness and obligations secured by this Deed of Trust may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement, whether by court action or pursuant to the power of sale or other powers contained in this Deed of Trust, shall prejudice or in any

**DEED OF TRUST**
**(Continued)**

Loan No: 4001003855

Page 6

manner affect Trustee's or Lender's right to realize upon or enforce any other security now or hereafter held by Trustee or Lender, it being agreed that Trustee and Lender, and each of them, shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by Lender or Trustee in such order and manner as they or either of them may in their absolute discretion determine. No remedy conferred upon or reserved to Trustee or Lender, shall be exclusive of any other remedy in this Deed of Trust or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given in this Deed of Trust or now or hereafter existing at law or in equity or by statute. Every power or remedy given by the Note or any of the Related Documents to Trustee or Lender or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Lender, and either of them may pursue inconsistent remedies. Nothing in this Deed of Trust shall be construed as prohibiting Lender from seeking a deficiency judgment against the Trustor to the extent such action is permitted by law.

Election of Remedies. All of Lender's rights and remedies will be cumulative and may be exercised alone or together. If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

Request for Notice. Trustor, on behalf of Trustor and Lender, hereby requests that a copy of any Notice of Default and a copy of any Notice of Sale under this Deed of Trust be mailed to them at the addresses set forth in the first paragraph of this Deed of Trust.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Lancaster County, State of Nebraska. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page (or computer system reference) where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by all the beneficiaries under this Deed of Trust or their successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

NOTICES. Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Deed of Trust:

Amendments. What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Joint and Several Liability. All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

No Waiver by Lender. Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more

**DEED OF TRUST**

Loan No: 4001003855          **(Continued)**          Page 7

of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Nebraska as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means Frontier Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Amanda Podwinski and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Deed of Trust, together with all interest thereon.

**Lender.** The word "Lender" means Frontier Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the promissory note dated August 8, 2018, **in the original principal amount of $146,900.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Frontier Bank, whose address is 8380 GlynOaks Dr., Lincoln, NE 68516 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Amanda Podwinski and Brian Podwinski.

**DEED OF TRUST**
(Continued)

Loan No: 4001003855

Page 8

---

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH
TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

X _____
Amanda Podwinski

X _____
Brian Podwinski

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Nebraska___ )
                         ) SS
COUNTY OF ___Lancaster___ )

On this day before me, the undersigned Notary Public, personally appeared Amanda Podwinski and Brian Podwinski, to
me known to be the individuals described in and who executed the Deed of Trust, and acknowledged that they signed
the Deed of Trust as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___9th___ day of ___August___, 20 _18_.

By ___Kristin Kling___

Printed Name: ___Kristin Kling___

Notary Public in and for the State of ___Nebraska___

Residing at ___Lancaster County___

My commission expires ___March 10, 2018___

GENERAL NOTARY - State of Nebraska
KRISTIN K LING
My Comm'l. Exp. March 10, 2021

---

Originator Names and Nationwide Mortgage Licensing System and Registry IDs:

Organization: Frontier Bank          NMLSR ID: 514398

Individual: Philip Andrew Goyette    NMLSR ID: 631669

---

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by
this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing
to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this
Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the
parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail
the reconveyance and Related Documents to:

Date: _____          Beneficiary: _____

                                                By: _____

                                                Its: _____

---

LaserPro, Ver. 18.2.0.027   Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - NE
P:\CFI\LPL\G01.FC TR-10958 PR-195

Inst # 2018031965  Tue Aug 14 15:12:25 CDT 2018
Filing Fee: $112.00                        cpqdal
Lancaster County, NE Assessor/Register of Deeds Office   DTRUST
                                           Pages 19

————————————— [Space Above This Line For Recording Data] —————————————

After Recording Return To:
FRONTIER BANK
8380 GLYNOAKS DR
LINCOLN, NEBRASKA 68516
Loan Number: 4095112439

# DEED OF TRUST

MIN: 100914140951124392                    **MERS Phone: 888-679-6377**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated AUGUST 8, 2018          , together with all Riders to this document.
(B)  "Borrower" is  AMANDA PODWINSKI AND BRIAN PODWINSKI WIFE AND HUSBAND


Borrower is the trustor under this Security Instrument.
(C)  "Lender" is FRONTIER BANK

Lender is a NEBRASKA BANKING CORPORATION                         organized
and existing under the laws of    NEBRASKA
Lender's address is  8380 GLYNOAKS DR, LINCOLN, NEBRASKA 68516


(D)  "Trustee" is FRONTIER BANK, A NEBRASKA BANKING CORPORATION
8380 GLYNOAKS DR, LINCOLN, NEBRASKA 68516


NEBRASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3028 1/01                         Page 1 of 15                    DocMagic *eFerms*
                                                                      www.docmagic.com

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "Note" means the promissory note signed by Borrower and dated  AUGUST 8, 2018                        .
The Note states that Borrower owes Lender FOUR HUNDRED FIFTY-THREE THOUSAND ONE HUNDRED
AND 00/100                             Dollars (U.S. $ 453,100.00         ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
SEPTEMBER 1, 2048           .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☒ Planned Unit Development Rider
☐ Balloon Rider              ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☐ Second Home Rider
☐ Condominium Rider          ☐ Other(s) [specify]

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

<div style="text-align:center">COUNTY   of   LANCASTER                    :</div>

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LOT FOUR (4), BLOCK THREE (3), SOUTH RIDGE ACRES ADDITION, LANCASTER
COUNTY, NEBRASKA
A.P.N.: 15-15-403-004-000

which currently has the address of                    15600 S 76TH ST
                                                    [Street]

                    ROCA              , Nebraska    68430        ("Property Address"):
                    [City]                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.**  Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due

NEBRASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3028 1/01                                    Page 3 of 15                    DocMagic *eForms*
                                                                    www.docmagic.com

under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase

"covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall

not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which

consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage

Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability

DocMagic *eForms*
www.docmagic.com

under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in

Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the power of sale is invoked, Trustee shall record a notice of default in each county in which any part of the Property is located and shall mail copies of such notice in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Upon receipt of payment of the price bid, Trustee shall deliver to the purchaser Trustee's deed conveying the Property. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of exercising the power of sale, and the sale, including the payment of the Trustee's fees actually incurred and reasonable attorneys' fees as permitted by Applicable Law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Request for Notices.** Borrower requests that copies of the notice of default and sale be sent to Borrower's address which is the Property Address.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
AMANDA PODWINSKI              -Borrower

_____ (Seal)
BRIAN PODWINSKI              -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:                                Witness:

_____          _____

———————————— [Space Below This Line For Acknowledgment] ————————————

State of  NEBRASKA

County of  LANCASTER

The foregoing instrument was acknowledged before me this  AUGUST 8, 2018

by  AMANDA PODWINSKI AND BRIAN PODWINSKI WIFE AND HUSBAND

_____
Signature of Person Taking Acknowledgment

VP-Residential Lending
Title

GENERAL NOTARY - State of Nebraska
KRISTIN K LING
My Comm. Exp. March 10, 2021

_____
Serial Number, if any

(Seal)

My commission expires: March 10, 2021

Loan Originator: KRISTIN K LING, NMLSR ID 623682
Loan Originator Organization: FRONTIER BANK, NMLSR ID 514398

NEBRASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3028 1/01                              Page 15 of 15

DocMagic eForms
www.docmagic.com

Loan Number: 4095112439

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        8th         day of
AUGUST, 2018                         , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date,
given by the undersigned (the "Borrower") to secure Borrower's Note to FRONTIER BANK, A
NEBRASKA BANKING CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

15600 S 76TH ST, ROCA, NEBRASKA 68430
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in
COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

SOUTH RIDGE ACRES
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and

which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
AMANDA PODWINSKI            -Borrower

_____ (Seal)
BRIAN PODWINSKI            -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                          Page 3 of 3

DocMagic *EForms*
www.docmagic.com

Citizens One Home Loans™

# Mortgage Statement

EXHIBIT C

Customer Service 1-800-234-6002
Monday - Friday 8 am to 7 pm ET
www.citizensone.com

Statement Date: 10/01/2019

AMANDA PODWINSKI
15600 S 76TH ST
ROCA NE 68430

| | |
|---|---|
| Account Number | [redacted]2463 |
| Payment Due Date | 11/01/2019 |
| **Amount Due** | **$2,835.53** |

If payment is received after 11/16/2019, a $116.48 late fee will be charged

**Property Address:** 15600 S 76TH ST
ROCA NE 68430

| Account Information | |
|---|---|
| Outstanding Principal * | $445,234.88 |
| Escrow Balance | $63.14 |
| Interest Rate | 4.62500% |
| Prepayment Penalty | No |

* The Outstanding Principal is not the amount required to pay off your loan in full.

| Explanation of Amount Due | |
|---|---|
| Principal | $613.56 |
| Interest | $1,716.01 |
| Escrow (Taxes and Insurance) | $505.96 |
| Optional Insurance | $0.00 |
| Buydown Amount | $0.00 |
| **Regular Monthly Payment** | **$2,835.53** |
| Total Fees and Charges | $0.00 |
| Overdue Payment(s) | $0.00 |
| **Total Amount Due** | **$2,835.53** |

**Transaction Activity Since Last Statement**

| Transaction Description | Posted Date | Effective Date | Amount | Principal | Interest | Escrow | Optional Insurance | Fees/ Other |
|---|---|---|---|---|---|---|---|---|
| Payment Due (10/01/19) | 10/01/19 | 10/01/19 | $2,490.69 | $611.17 | $1,718.40 | $161.12 | $0.00 | $0.00 |
| Escrow Adv Paid | 10/01/19 | | $0.00 | $0.00 | $0.00 | -$97.98 | $0.00 | $0.00 |
| Principal Pmt | 10/01/19 | | $9.31 | $9.31 | $0.00 | $0.00 | $0.00 | $0.00 |

**Past Payments Breakdown**

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $620.48 | $6,080.59 |
| Interest | $1,718.40 | $17,289.59 |
| Escrow (Taxes and Insurance) | $161.12 | $1,611.20 |
| Fees | $0.00 | $20.00 |
| Total | $2,500.00 | $25,001.38 |

Please see reverse for important information about your account

---

Citizens One Home Loans™

YOUR PAYMENT IS SCHEDULED TO BE WITHDRAWN FROM YOUR DESIGNATED ACCOUNT.
THIS STATEMENT IS BEING PROVIDED FOR INFORMATION PURPOSES.

☐ *Check here and see reverse for address correction.*

AMANDA PODWINSKI
15600 S 76TH ST
ROCA, NE 68430

| Amount Due | |
|---|---|
| Loan Number: [redacted]2463 | |
| **Due By 11/01/2019** | **$2,835.53** |
| $116.48 late fee will be charged after 11/16/2019 | |
| Please specify additional payments to: | |
| Principal | ________ |
| Escrow | ________ |
| Late Charges | ________ |
| Other Fees | ________ |
| Total Amount Enclosed: | $ |

CITIZENS ONE HOME LOANS
PO BOX 2800
GLEN ALLEN VA 23058-2800

*Please write your loan number on your check. Make check payable to Citizens One*

EXHIBIT C

YOUR PAYMENT IS SCHEDULED TO BE WITHDRAWN FROM YOUR DESIGNATED ACCOUNT.
THIS STATEMENT IS BEING PROVIDED FOR INFORMATION PURPOSES.

DocuSign Envelope ID: A7349629-3912-4B45-B84E-E2518C9EF285

# ✖✖ Citizens One
## Home Loans

### Mortgage Statement

Customer Service 1-800-234-6002
Monday - Friday 8 am to 8 pm ET
www.citizensone.com

Statement Date: June 1, 2020

AMANDA PODWINSKI
15600 S 76TH ST
ROCA NE 68430

| | |
|---|---|
| Account Number | 2463 |
| Payment Due Date | July 1, 2020 |
| **Amount Due** | **$2,835.53** |

If payment is received after July 16, 2020, a $116.48 late fee will be charged.

Property Address: 15600 S 76TH ST
ROCA NE 68430

## Account Information

| | |
|---|---|
| Outstanding Principal * | $439,793.57 |
| Escrow Balance | -$3,141.09 |
| Interest Rate | 4.62500% |
| Prepayment Penalty | No |

* The Outstanding Principal is not the amount required to pay off your loan in full.

## Explanation of Amount Due

| | |
|---|---|
| Principal | $634.53 |
| Interest | $1,695.04 |
| Escrow (Taxes and Insurance) | $505.96 |
| Optional Insurance | $0.00 |
| Buydown Amount | $0.00 |
| **Regular Monthly Payment** | **$2,835.53** |
| Total Fees and Charges | $0.00 |
| Overdue Payment(s) | $0.00 |
| **Total Amount Due** | **$2,835.53** |

## Transaction Activity Since Last Statement

| Transaction Description | Posted Date | Effective Date | Amount | Principal | Interest | Escrow | Optional Insurance | Fees/ Other |
|---|---|---|---|---|---|---|---|---|
| Payment Due (06/01/20) | 06/01/20 | 06/01/20 | $2,835.53 | $631.85 | $1,697.72 | $505.96 | $0.00 | $0.00 |
| Escrow Adv Paid | 06/01/20 | | $0.00 | $0.00 | $0.00 | -$505.96 | $0.00 | $0.00 |
| Principal Pmt | 06/01/20 | | $64.47 | $64.47 | $0.00 | $0.00 | $0.00 | $0.00 |

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $696.32 | $4,136.01 |
| Interest | $1,697.72 | $10,226.23 |
| Escrow (Taxes and Insurance) | $505.96 | $3,035.76 |
| Fees | $0.00 | $0.00 |
| Total | $2,900.00 | $17,400.00 |

Please see reverse for important information about your account!

---

# ✖✖ Citizens One
## Home Loans

*Check here and see reverse for address correction.*

Your payment of $2,900.00 is scheduled to be withdrawn from your designated account on July 1, 2020.

AMANDA PODWINSKI
15600 S 76TH ST
ROCA, NE 68430

## Amount Due

Loan Number 2463

| | |
|---|---|
| Due By July 1, 2020 | $2,835.53 |

$116.48 late fee will be charged after July 16, 2020.

**Additional Payment.** If you're paying more than the amount due, specify how you'd like the extra amount applied to your loan.

| | |
|---|---|
| Principal: | _____ |
| Escrow: | _____ |
| Late Charges: | _____ |
| Other Fees (Include Fee Name): | _____ |
| **Total Amount Enclosed:** | $ _____ |

CITIZENS ONE HOME LOANS
PO BOX 2800
GLEN ALLEN  VA  23058-2800

*If you are mailing an additional payment, please make the check payable to Citizens One and include your loan number*

This statement is being provided for information purposes.

If your loan is past due and you would like to reinstate it, call 800-234-6002 to ensure that you have the most current reinstatement or payoff amount. If your loan is in foreclosure, there may be additional fees and costs due to a pending legal action.

## Reading Your Statement

Your Statement Date is the last day for all activity shown on the statement. Any activity after this date will be shown on the next statement.

The Transaction Activity section shows any transactions that have credited or debited your account since your last statement.

## Important Information

### IMPORTANT BANKRUPTCY INFORMATION
If you are subject to a pending bankruptcy proceeding, or if you have received a discharge, this statement is for information purposes only. It is in advise you of the status of the loan securing the debt and is not an attempt to collect a debt.

**IMPORTANT NOTICE TO SERVICEMEMBER AND THEIR DEPENDENTS**
If you are a servicemember who is, or recently was, on "active duty" or "active service," or a dependent of such a servicemember, you may be entitled to certain legal rights and protections, including protection from foreclosure or eviction, pursuant to the Servicemembers Civil Relief Act, as amended (the SCRA) and possibly, certain similar state statutes. If you believe you may be entitled to rights and protections under SCRA, contact us at:

Office of the Chairman
Military Assistance Team
One Citizens Bank Way
JCA150
Johnston, RI 02919
Phone: 1-800-234-6002

This communication is from a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

We may report information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

## Making Your Payments

### PAYMENT OPTIONS
Automatic loan payments: You can schedule a one-time electronic payment or recurring payments to be automatically withdrawn from your account at no cost to you. You can save time, postage and the worry that your payment will be delayed or lost in the mail. For additional information, visit our website at citizensone.com, go to our mobile app, or call us at 800-234-6002

Online banking payments: If you're using an online bill pay service, send your payments to Citizens One Home Loans, P.O. Box 2800, Glen Allen, VA 23058-2800.

Payments by phone: You can transfer funds electronically from a designated deposit account and apply to your loan the day its due or for a date in the future. Call 800-234-6002 for details. You'll need your bank's routing information and your checking account number (located at the bottom of your check), in addition to your loan number and Social Security Number.

Payments by mail: You can mail us a check, with the coupon on the statement, in the enclosed envelope. Be sure to allow enough time for delivery. Make your check payable to Citizens One Home Loans and include your loan number. Don't send cash or coins.

Additional Funds: You can send a payment to be applied directly to principal, escrow, late charges or other fees. If you send us more than your regular payment amount due, use the space provided on the coupon to indicate how you want those funds applied. Additional funds received, if not specified, will be applied first to outstanding fees then to your principal. Additional principal payments may be made only if your loan is current.

### PAYMENT INFORMATION
Partial Payments: We don't accept partial payments except for prearranged agreements that allow them.

Payments: All payments received are subject to verification and collection. If a payment made in connection with this loan is not honored by the financial institution on which it's drawn, a return item charge will be assessed.

Correspondence: Do not send correspondence with your payment. Send all correspondence to Citizens One Home Loans, Attn: Customer Service, P.O. Box 6260, Glen Allen, VA 23058-6260.

### LATE CHARGES
Payments received after the due date are considered late. Late charges will be charged according to the terms of your note and/or security instrument. We recommend you use the mailing envelope and coupon provided and allow sufficient time for payments to reach us. We assume no responsibility for mailing time.

### PAYMENT PROBLEMS
Are you dealing with a financial hardship and need help with your payments? If so, call us at 800-456-8555, Monday through Friday from 8 a.m. to 8 p.m. ET. We can discuss your options and work toward a solution. The Department of Housing and Urban Development (HUD) offers homeownership counseling at no charge. To find counseling agencies or programs in your area, call 800-569-4287, TDD 800-877-8339 or visit www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm

## Contact Us

To notify us of a possible error, to request information, to dispute credit reporting, or to opt out of receiving bankruptcy statements, write to us at:

Citizens One Home Loans
Attn: Customer Service
P.O. Box 6260
Glen Allen, VA 23058-6260

If you have questions, give us a call at 800-234-6002.

## Mailing Addresses

Overnight Mail:
Citizens One Home Loans
10561 Telegraph Road
Glen Allen, VA 23059-4577

Insurance Department:
Citizens Bank, N.A.
P.O. Box 202060
Florence, SC 29502-2060

For Payments without a Coupon:
Citizens One Home Loans
Attn: Payment Processing
P.O. Box 2800
Glen Allen, VA 23058-2800

Tax Department:
Citizens One Home Loans
P.O. Box 9242
Coppell, TX 75019-9279

## Tax and Insurance Information

### TAXES
If you have an escrow account for payment of your real estate taxes, we'll receive the tax bills. You can keep the paper copies of annual, semi-annual or quarterly bills for your reference. If you receive an additional assessment, supplemental, interim or corrected tax bill, be sure to send it to us right away by fax or mail so we can pay it. Those bills are mailed directly to the homeowner and not provided to us.

Citizens One Home Loans
P.O. Box 9242
Coppell, TX 75019-9279
Phone: 1-866-202-8354
Fax: 1-817-826-1897

If we don't escrow for payment of your taxes, you're responsible to pay them directly to your taxing authority. Failure to pay these taxes in a timely manner may result in tax advances, increased payments, liens or tax sales.

### INSURANCE
Your security instrument requires that you maintain fire and extended coverage for at least the amount of the outstanding loan balance or replacement cost value of your property. As a homeowner, it's important to protect your investment. You should consult with your agent, broker, or insurance carrier to determine the replacement value of your property and discuss available coverage. Please make sure the mortgagee clause on your policy reads as follows:

Mortgagee Clause:    Citizens Bank, N.A.
                     ISAOA ATIMA
                     P.O. Box 202060
                     Florence, SC 29502-2080
                     Phone: 1-866-826-4904
                     Fax: 1-843-413-2008

### PMI INSURANCE
If you're escrowed for Private Mortgage Insurance, you may be eligible to cancel your insurance based on meeting certain requirements. To be considered for cancellation of the Private Mortgage Insurance on your loan, send your request in writing to Citizens One Home Loans, P.O. Box 6260, Glen Allen, VA 23058-6260. Once we receive your request, we'll send you specific cancellation guidelines.

Citizens One is a brand of Citizens Bank, N.A.                    04CC0160331-11-19

---

Has Your Address or Telephone Number Changed?
You can make your changes online at citizensone.com or complete and mail this form with your payment.

Loan Number _____

Mailing Address _____

City_____ State_____ Zip_____

Home Phone (_____)_____

Business Phone (_____)_____    Business Phone (_____)_____

Email Address _____    Email Address _____

Name (Please Print)_____    Name (Please Print)_____

Borrower Signature                                    Co-Borrower Signature

**John Lentz**

| | |
|---|---|
| **From:** | Felishia Roman <info@copperwoodcap.com> |
| **Sent:** | Friday, June 26, 2020 12:15 PM |
| **To:** | John Lentz |
| **Subject:** | Re: Podwinski Request for Account balance 11/ 2019 |

Good Afternoon John,
The amount owed is **$38,209.02.**
Let me know if you have any other questions.

On Thu, Jun 25, 2020 at 1:53 PM John Lentz <john@lepantandlentz.com> wrote:

Felisha,


I spoke to a gal this afternoon and she indicated I should email you my request. I am Brian Podwinski's bankruptcy attorney, former owner of Blue Blood Brewing Co., which has closed. In the bankruptcy, I am attempting to avoid a lien (NOT copperwood), and need to show balances of all other liens on the property.


Can you provide me with a stated balance (email is fine) for November, 2019 and then current?


Thanks-attached is the Notice of Commencement indicating my involvement in the case. My physical address changed March, 2020 though, so the address is now different.


*L&L*    *John A. Lentz*

Attorney

**Lepant & Lentz, PC, LLO**


Phone: 402-421-9676

Fax: 402-608-2821


650 J St., STE 215B

Lincoln, NE 68508


EXHIBIT D

1

2111 S. 67th St., STE 300

Omaha, NE 68106

**www.JohnLentz.com**

---

### STATEMENT OF INTENDED USE:

CONFIDENTIALITY NOTICE: This message is covered by the Electronic Communications Privacy Act, Title 18, United States Code, 2510-2521. This E-mail, along with any documents, files, or attachments, are copyrighted and are proprietary products of Lepant & Lentz, PC, LLO., and may contain information that is confidential, privileged, subject to the restrictions of the Gramm-Leach-Bliley Act, or otherwise protected from disclosure. The information contained in this electronic message is or may be protected by the attorney-client privilege, the work product doctrine, joint defense privileges, trade secret protections, and/or other applicable protections from disclosure. There is not any intent on the part of the sender to waive any above described evidentiary or other common law privilege (including the attorney-client privilege) that may attach to this communication. Although this e-mail message and any attachments are believed to be free of any virus or other defect that might negatively affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Lepant & Lentz, PC, LLO for any loss or damage arising in any way in the event that such a virus or defect exists. Any unauthorized use, reproduction, or transfer of this message or attachments, in any medium, is strictly prohibited. If you are not the intended recipient, you are hereby notified that any disclosure, copying, printing, reading, distribution or use of any information contained in or attached to this E-mail is STRICTLY PROHIBITED. If you received this E-mail in error, please immediately notify the Firm by E-mail to office@lepantandlentz.com and/or by telephone call to John A. Lentz at 402-421-9676, and destroy the original E-mail and its attachments, without reading, printing, or saving it in any manner. Your cooperation is appreciated. Thank you.


IRS CIRCULAR 230 NOTICE: IRS Circular 230 regulates written tax communications between tax advisors and clients. We are required to inform you that any tax advice contained in this communication cannot be used for the purpose of avoiding tax penalties. Tax advice contained in this communication cannot be used for promotion, marketing or recommending a transaction to another party. Any person who is not the addressee should seek specific advice from an independent tax advisor.

**Inst # 2019003067   Wed Jan 30 11:15:13 CST 2019**
Filing Fee: $70.00   cpodal
Lancaster County, NE  Assessor/Register of Deeds Office   DTRUST
Pages: 11

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

**Prepared By:**                                      **After Recording Return To:**

Copperwood Capital LLC                    Copperwood Capital, LLC
800 N Shoreline Blvd Ste 1500s |       800 N Shoreline Blvd Ste 1500s
Corpus Christi, TX 78401 |                 Corpus Christi, TX 78401

## DEED OF TRUST

**THIS DEED OF TRUST (the "Trust") dated January 25, 2019, is made by and between:**

Brian Podwinski of Nebraska, 15600 South 76th Street, Roca, NE 68430, as Trustor
Amanda Podwinski of Nebraska, 15600 South 76th Street, Roca, NE 68430, as Trustor
(collectively the "Borrower")

### -AND-

Copperwood Capital LLC of 800 N Shoreline Blvd Ste 1500s, Corpus Christi, Texas 78401, as
Beneficiary

(collectively the "Lender")

### -AND-

Blue Blood Brewing Company, Inc., a Nebraska corporation of 925 Robbers Cave Rd, Lincoln,
NE, 68502
(collectively the "Guarantor")

**WITNESSETH:**

**THAT FOR AND IN CONSIDERATION OF** the sum lent to the Borrower by the Lender, in the amount of $350,000.00 U.S. Dollars as an A/R Line of Credit as evidenced by the Master Factoring and Security Agreement (the "Notes") dated December 04, 2018, AND Future Receivables Sale Agreement dated December 12th, 2018, the receipt of which the Borrower does hereby acknowledge itself indebted, the Borrower IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to R. Kent Radke, a Member of the Nebraska Bar Association, as TRUSTEE, IN TRUST, WITH POWER OF SALE, the following described real property (the "Property"), located at 15600 S 76th St in the County of Lancaster, State of Nebraska, with the following legal description:

**Lot 4, Block 3, SOUTH RIDGE ACRES ADDITION, Lancaster County, Nebraska, more commonly known as 15600 South 76th Street, Roca, Nebraska 68430  Property ID 15-15-403-004-000**

**TOGETHER WITH** all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions will also be covered by this Trust.

**BORROWER COVENANTS** that Borrower is the legal owner of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower further warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**To Protect the Security of this Deed of Trust, the parties do hereby agree as follows:**

## TERMS RELATING TO PAYMENT

**1. PROMISE TO PAY.** The Borrower, for value received, promises to pay to the Lender, interest and all fees and costs on the terms outlined in this Trust or in any amendment, extension, or renewal of the Trust and any additional amounts secured by this Trust on the terms elsewhere provided for such debts and liabilities.

**2. INTEREST.** The Borrower agrees to pay the Principal Amount with interest before and after maturity and before and after default at the rate of 4 percent (the "Interest Rate"). The Interest Rate will be calculated from the date a default is considered.

**3. PAYMENT LOCATION.** The Borrower will make payments to PO Box 4776 Dept. 300, Houston, Texas 77210-4776, or at such other place as may be designated by Lender at a later date.

**4. REAL ESTATE TAXES:** Borrower shall pay all real estate taxes assessed against the property before they become delinquent and provide proof of payment to the Lender. In the event Borrower does not pay the real estate taxes, before they become delinquent, Lender may pay the taxes, declare a default under this Deed of Trust and add the amount of taxes paid to the amount due to Lender.

**5. OBLIGATION TO PAY.** The Borrower agrees to pay all moneys payable pursuant to this Trust and all additional amounts secured by this Trust without abatement, set-off or counterclaim. Should the Borrower make any claim against the Lender either initially or by way of abatement, set-off or counterclaim, the Borrower agrees that any such claim will not reduce or postpone their obligation to make all payments as provided by this Trust.

**6. APPLICATION.** All payments received by Lender shall be first applied to advances, which may have been made by Lender, and then to interest due and last to principal due.

**7. PREPAYMENT PRIVILEGES.** When not in default, the Borrower may prepay, without penalty, all or a portion of the Principal Amount and Interest earlier than it is due (i.e., make payment prior to the time that it is due). Partial prepayment will not postpone the due date of any subsequent payment or change the payment amount, unless the Lender otherwise agrees in writing. Rather, prepayments will first be applied to the interest calculated at the Interest Rate, and second to the Principal Amount.

**8. ADDITIONAL CHARGES AND ENCUMBRANCES.** The Borrower must pay all taxes, assessments, charges, fines, and all other impositions attributable to the Property and all trusts, liens, and other encumbrances on the Property.

**9. RELEASE AND RECONVEYANCE.** Upon payment of all sums secured by this Trust, including the Principal Amount and interest, the Lender will request the Trustee to reconvey the Property and must surrender this Trust and the Note evidencing debt secured by this Trust to Trustee. Trustee must reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons will pay any recordation costs. The Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**10. NO SALE WITHOUT CONSENT.** The Trustee will not sell, transfer, assign, or otherwise dispose of all or part of the Property or any interest in the Property, without the Borrower's and Lender's prior written consent.

**11. PROPERTY INSURANCE.** The Borrower must keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which the Lender requires insurance. The insurance carrier providing the insurance will be chosen by the Borrower. However, the Lender will have the right to disapprove the Borrower's choice, which right may not be unreasonable.

If the Borrower fails to maintain any of the coverage's described above, then Lender may obtain insurance coverage, at Lender's discretion and Borrower's expense. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of the

insurance that the Borrower could have obtained. However, any amounts paid by Lender will become additional debt of the Borrower and secured by this Trust. The amounts paid by the Lender will bear interest at the Interest Rate from the date of payment and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies must include a standard mortgage and/or trust clause and will name Lender as mortgagee and/or as an additional loss payee, stating that any loss is payable to the Lender. Borrower further agrees to generally assign rights to insurance proceeds to the Lender up to the amount of the outstanding loan balance. If, at the request of the Lender, Borrower will provide Lender (a) a copy of the insurance policy; (b) all receipts of paid premiums and renewal notices.

In the event of loss, the Borrower must give prompt notice to the insurance carrier and to the Lender. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds must be applied to restoration or repair of the Property, if the restoration or repair is economically feasible. If the restoration or repair is not economically feasible, the insurance proceeds will be applied to the remainder of this Trust, whether or not the balance of the Trust is then due, with the excess, if any, paid to the Borrower.

**13. HAZARDOUS SUBSTANCES.** The Borrower will not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on the Property. Hazardous substances include pollutants, wastes, and those substances defined as toxic or hazardous substances by environmental law, as well as the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. Furthermore, the Borrower will not, nor allow anyone else to do, anything affecting the Property involving any hazardous substances that would materially affect the value of the Property. The Borrower will promptly take all necessary remedial actions under federal, state, and local laws regarding hazardous substances.

**14. GUARANTEE.** Each person or entity signing or joining in this Trust as a Guarantor, Covenantor, or Co-signer agrees to the following terms:

    a. Guarantor covenants and agrees that all obligations and liability under this Trust will be joint and several. Additionally, where there is more than one Guarantor, each Guarantor will be jointly and severally liable to the other Guarantor(s) and Borrower.

    b. The Guarantor is bound to fulfill the terms and conditions of this Trust, provided the Borrower, as principal debtor, fails to do so;

    c. The Guarantor guarantees full performance and release of all the Borrower's obligations under this Trust;

    d. If the Guarantor assumes the Borrower's obligations under this Trust, the Guarantor will also obtain all of the Borrower's rights and benefits under this Trust;

e. The Guarantor must indemnify and hold harmless the Lender against all claims, damages, and payments, or loss which might arise or have arisen from the failure of the Borrower and/or Guarantor to pay the amounts owed under this Trust;

f. The Lender will have the choice to proceed against the Guarantor before proceeding against the Borrower to enforce any obligations due under this Trust in the event of default. Furthermore, any enforcement against such obligations can take place before, after, or during any enforcement of the Borrowers debts and/or obligations under this Trust;

g. The Lender can, without the consent or approval of the Guarantor, modify and/or amend the Interest Rate, the Principal Amount and any other term of the Trust or any obligation secured under this Trust. Furthermore, any amendment or modification of the Trust will not release or lessen the liability of the Guarantor;

h. The Guarantor will be bound and subject to any and all changes, modifications, variations, and amendments made to this Trust, regardless of whether such changes were made with or without the consent or approval of the Guarantor;

i. The Guarantor has read this Section and is aware of and fully agrees with its terms and in particular, the terms of this Section.

j. The Lender will serve notice to the Guarantor and any notice will be provided in same manner as provided in the Notice Section as outlines in this Trust.

## DEFAULT AND REMEDIES

**15. DEFAULT.** The Borrower will be considered in default under the terms of this Trust if any of the following conditions are met:

a. The Borrower defaults on Master Factoring and Security Agreement or Future Receivable Sales Agreement.

b. The Borrower fails to perform or comply with any of the terms and conditions or any obligations or responsibilities due under this Trust.

c. The Borrower has given or made, at any time during the loan process, any materially false, misleading, or inaccurate information or statements to the Lender or any other party under this Trust in connection with the loan.

d. If any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Trust.

e. If default occurs under any other lien or encumbrance existing against the Property;

f. The Borrower abandons or fails to occupy the Property.

g. The Property or any material part of the Property is expropriated.

**16. ACCELERATION.** If at any time the Borrower should be in default under this Trust, the Lender must give notice to the Borrower. The notice must specify: (a) the default; (b) the action required to cure the default (if allowable); (c) a date, not less than 30 days from the date of the notice, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Trust and sale of the Property. If the default is not curable and/or if the default is not cured on or before the date specified in the notice, the Lender at its option may require immediate payment in full of all sums, including the Principal Amount, interest, and all other amounts secured by this Trust. If the default is cured, the Trust will be reinstated. If the default is not cured, the Lender may invoke the power of sale and begin foreclosure proceedings.

The Lender will at all times retain the right to require immediate payment in full in the event of default. Any forbearance on the part of the Lender upon default, which includes but is not limited to acceptance of late payment, acceptance of payment from third parties, or acceptance of payments less than the amount due, will not constitute a waiver to enforce acceleration on default.

**17. PROTECTION OF LENDER'S INTEREST.** If at any time the Borrower fails to perform the covenants and agreements under this Trust, or if there is a legal proceeding that significantly affects the Lender's interest in the Property, or if the Borrower has abandoned the Property, then the Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property and/or rights under this Trust, which includes, but is not limited to:

a. Paying any sums secured by a lien which has priority over this Trust;

b. Appearing in court;

c. Paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Trust; and

d. Paying for reasonable costs to repair and maintain the Property.

The Lender will at all times retain the right to take action under this Section. However, the Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that the Lender will not incur any liability for not taking any or all actions to perform such tasks. Furthermore, any amounts paid by the Lender will become additional debt of the Borrower secured by this Trust.

**18. POWER OF SALE.** If at any time the Borrower is in default under this Trust, the Lender will have the right and authority to foreclose and force the sale of the Property without any judicial proceeding. Any delay in the exercising of this right will not constitute a waiver to

exercise this right at a later date should the Borrower remain in default or subsequently default again in the future.

**19. REMEDIES.** The Lender will have the right to invoke all remedies permitted under Applicable Law, whether or not such remedies are expressly granted in this Trust, including but not limited to any foreclosure proceedings.

If the Lender invokes the power of sale, the Trustee will execute a written notice of the occurrence of an event of default and of the Lender's decision to sell the Property. The Lender or Trustee will mail copies of the notice to the Borrower and Guarantor and will also give public notice of sale in the manner provided by Applicable Law. After the time required by Applicable Law, the Trustee will sell the Property at a public auction to the highest bidder at the time and place and under the terms designated by the Trustee in the notice of sale. The Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Furthermore, the Lender or its designee may purchase the Property at any sale.

## MISCELLANEOUS TERMS

**20. GOVERNING LAW.** This Trust will be construed in accordance with the laws of the state of Nebraska ("Applicable Law"). Applicable Law will include all controlling applicable federal, state and local statutes. All rights and obligations under this Trust are subject to any requirements and limitations of Applicable Law.

**21. SEVERABILITY.** If any portion of this Trust will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Trust is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

**22. JOINT SIGNATURES.** If the Borrower is more than one person or legal entity, each Borrower who signs this Trust will be jointly and severally bound to comply with all the obligations and liabilities of the other Borrower(s).

**23. STATUTORY PROVISIONS.** The provisions contained in this Trust are additional and supplemental, to the extent permitted by law, to the provisions set out in the Applicable Law as they relate to trusts.

**24. SUBSTITUTE TRUSTEE.** The Lender may, at its option, from time to time appoint a successor Trustee by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument will contain the name of the original Lender, Trustee, and Borrower, the book and page where this Trust is recorded and the name and address if the successor Trustee. Without conveyance of the Property, the successor trustee will succeed to all the title, powers and duties of the Trustee.

**25. NOTICE.** All notice given by either party in connection with this Trust must be in writing. Notice will be considered sufficient when mailed by first class or certified mail to the address of the recipient. The recipient's address will be the property address as stated under this Trust unless another address has been designated. If there is a change of address by any party, that party must promptly notify all parties under this Trust of the change of address. Any notice will be considered effective on the same day that it was sent, unless the day falls on a national holiday, Saturday, or Sunday, in which case, the next business day will be considered as the day of receipt.

**IN WITNESS WHEREOF** this Trust has been executed by the Borrower and Guarantor in the manner prescribed by law as of January 25, 2019 as stated above.

**Borrower:**

By: _____     Date: 1/25/19
Brian Podwinski

By: _____     Date: 1/25/19
Amanda Podwinski

**[Notary Acknowledgment to Follow]**

**Borrower Acknowledgement**

STATE OF NEBRASKA  )
                      ) SS.
COUNTY OF LANCASTER)

On January **25**, 2019 before me, a Notary in and for the State of Nebraska, personally appeared Brian Podwinski and Amanda Podwinski, husband and wife, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signatures on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_R. Kent Radke_ (Notary Seal)
Notary Public

GENERAL NOTARY - State of Nebraska
R. KENT RADKE
My Comm. Exp. July 14, 2019

My commission expires

**Guarantor**

Blue Blood Brewing Company, Inc., a Nebraska
corporation, Guarantor

By _____    Date ___1/25/19___
　　Brian Podwinski, ~~Manager~~ President

[Notary Acknowledgment to Follow]

## Guarantor Acknowledgement

STATE OF NEBRASKA    )
                            ) SS
COUNTY OF LANCASTER )

On January 25 , 2019 personally appeared Brian Podwinski, President of Blue Blood Brewing
Company, Inc., a Nebraska corporation, who proved to me on the basis of satisfactory evidence
to be the person whose name is subscribed to the within instrument and acknowledged to me that
he executed the same in his authorized capacity and that by his signature on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Notary Seal)
Notary Public

GENERAL NOTARY - State of Nebraska
R. KENT RADKE
My Comm. Exp. July 14, 2019

My commission expires

Inst # 2019003073   Wed Jan 30 11:26:33 CST 2019
Filing Fee: $70.00   cpodal
Lancaster County, NE  Assessor/Register of Deeds Office   DTRUST
Pages: 11

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**Prepared By:**

Copperwood Capital LLC
800 N Shoreline Blvd Ste 1500s  |
Corpus Christi, TX 78401  |

**After Recording Return To:**

Copperwood Capital, LLC
800 N Shoreline Blvd Ste 1500s
Corpus Christi, TX 78401

## DEED OF TRUST

**THIS DEED OF TRUST (the "Trust") dated January 25, 2019, is made by and between:**

Brian Podwinski of Nebraska, 15600 South 76th Street, Roca, NE 68430, as Trustor
Amanda Podwinski of Nebraska, 15600 South 76th Street, Roca, NE 68430, as Trustor
(collectively the "Borrower")

### -AND-

Copperwood Capital LLC of 800 N Shoreline Blvd Ste 1500s, Corpus Christi, Texas 78401, as
Beneficiary
(collectively the "Lender")

### -AND-

Blue Blood Brewing Company, Inc., a Nebraska corporation of 925 Robbers Cave Rd, Lincoln,
NE, 68502
(collectively the "Guarantor")

**WITNESSETH:**

**THAT FOR AND IN CONSIDERATION OF** the sum lent to the Borrower by the Lender, in the amount of $350,000.00 U.S. Dollars as an A/R Line of Credit as evidenced by the Master Factoring and Security Agreement (the "Notes") dated December 04, 2018, AND Future Receivables Sale Agreement dated December 12th, 2018, the receipt of which the Borrower does hereby acknowledge itself indebted, the Borrower IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to R. Kent Radke, a Member of the Nebraska Bar Association, as TRUSTEE, IN TRUST, WITH POWER OF SALE, the following described real property (the "Property"), located at 15600 S 76th St in the County of Lancaster, State of Nebraska, with the following legal description:

**Lot 4, Block 3, SOUTH RIDGE ACRES ADDITION, Lancaster County, Nebraska, more commonly known as 15600 South 76th Street, Roca, Nebraska 68430 Property ID 15-15-403-004-000**

**TOGETHER WITH** all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions will also be covered by this Trust.

**BORROWER COVENANTS** that Borrower is the legal owner of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower further warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**To Protect the Security of this Deed of Trust, the parties do hereby agree as follows:**

## TERMS RELATING TO PAYMENT

**1. PROMISE TO PAY.** The Borrower, for value received, promises to pay to the Lender, interest and all fees and costs on the terms outlined in this Trust or in any amendment, extension, or renewal of the Trust and any additional amounts secured by this Trust on the terms elsewhere provided for such debts and liabilities.

**2. INTEREST.** The Borrower agrees to pay the Principal Amount with interest before and after maturity and before and after default at the rate of 4 percent (the "Interest Rate"). The Interest Rate will be calculated from the date a default is considered.

**3. PAYMENT LOCATION.** The Borrower will make payments to PO Box 4776 Dept. 300, Houston, Texas 77210-4776, or at such other place as may be designated by Lender at a later date.

**4. REAL ESTATE TAXES:** Borrower shall pay all real estate taxes assessed against the property before they become delinquent and provide proof of payment to the Lender. In the event Borrower does not pay the real estate taxes, before they become delinquent, Lender may pay the taxes, declare a default under this Deed of Trust and add the amount of taxes paid to the amount due to Lender.

SORIAC

**5. OBLIGATION TO PAY.** The Borrower agrees to pay all moneys payable pursuant to this Trust and all additional amounts secured by this Trust without abatement, set-off or counterclaim. Should the Borrower make any claim against the Lender either initially or by way of abatement, set-off or counterclaim, the Borrower agrees that any such claim will not reduce or postpone their obligation to make all payments as provided by this Trust.

**6. APPLICATION.** All payments received by Lender shall be first applied to advances, which may have been made by Lender, and then to interest due and last to principal due.

**7. PREPAYMENT PRIVILEGES.** When not in default, the Borrower may prepay, without penalty, all or a portion of the Principal Amount and Interest earlier than it is due (i.e., make payment prior to the time that it is due). Partial prepayment will not postpone the due date of any subsequent payment or change the payment amount, unless the Lender otherwise agrees in writing. Rather, prepayments will first be applied to the interest calculated at the Interest Rate, and second to the Principal Amount.

**8. ADDITIONAL CHARGES AND ENCUMBRANCES.** The Borrower must pay all taxes, assessments, charges, fines, and all other impositions attributable to the Property and all trusts, liens, and other encumbrances on the Property.

**9. RELEASE AND RECONVEYANCE.** Upon payment of all sums secured by this Trust, including the Principal Amount and interest, the Lender will request the Trustee to reconvey the Property and must surrender this Trust and the Note evidencing debt secured by this Trust to Trustee. Trustee must reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons will pay any recordation costs. The Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**10. NO SALE WITHOUT CONSENT.** The Trustee will not sell, transfer, assign, or otherwise dispose of all or part of the Property or any interest in the Property, without the Borrower's and Lender's prior written consent.

**11. PROPERTY INSURANCE.** The Borrower must keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which the Lender requires insurance. The insurance carrier providing the insurance will be chosen by the Borrower. However, the Lender will have the right to disapprove the Borrower's choice, which right may not be unreasonable.

If the Borrower fails to maintain any of the coverage's described above, then Lender may obtain insurance coverage, at Lender's discretion and Borrower's expense. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of the

insurance that the Borrower could have obtained. However, any amounts paid by Lender will become additional debt of the Borrower and secured by this Trust. The amounts paid by the Lender will bear interest at the Interest Rate from the date of payment and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies must include a standard mortgage and/or trust clause and will name Lender as mortgagee and/or as an additional loss payee, stating that any loss is payable to the Lender. Borrower further agrees to generally assign rights to insurance proceeds to the Lender up to the amount of the outstanding loan balance. If, at the request of the Lender, Borrower will provide Lender (a) a copy of the insurance policy; (b) all receipts of paid premiums and renewal notices.

In the event of loss, the Borrower must give prompt notice to the insurance carrier and to the Lender. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds must be applied to restoration or repair of the Property, if the restoration or repair is economically feasible. If the restoration or repair is not economically feasible, the insurance proceeds will be applied to the remainder of this Trust, whether or not the balance of the Trust is then due, with the excess, if any, paid to the Borrower.

**13. HAZARDOUS SUBSTANCES.** The Borrower will not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on the Property. Hazardous substances include pollutants, wastes, and those substances defined as toxic or hazardous substances by environmental law, as well as the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. Furthermore, the Borrower will not, nor allow anyone else to do, anything affecting the Property involving any hazardous substances that would materially affect the value of the Property. The Borrower will promptly take all necessary remedial actions under federal, state, and local laws regarding hazardous substances.

**14. GUARANTEE.** Each person or entity signing or joining in this Trust as a Guarantor, Covenantor, or Co-signer agrees to the following terms:

    a. Guarantor covenants and agrees that all obligations and liability under this Trust will be joint and several. Additionally, where there is more than one Guarantor, each Guarantor will be jointly and severally liable to the other Guarantor(s) and Borrower.

    b. The Guarantor is bound to fulfill the terms and conditions of this Trust, provided the Borrower, as principal debtor, fails to do so;

    c. The Guarantor guarantees full performance and release of all the Borrower's obligations under this Trust;

    d. If the Guarantor assumes the Borrower's obligations under this Trust, the Guarantor will also obtain all of the Borrower's rights and benefits under this Trust;

e. The Guarantor must indemnify and hold harmless the Lender against all claims, damages, and payments, or loss which might arise or have arisen from the failure of the Borrower and/or Guarantor to pay the amounts owed under this Trust;

f. The Lender will have the choice to proceed against the Guarantor before proceeding against the Borrower to enforce any obligations due under this Trust in the event of default. Furthermore, any enforcement against such obligations can take place before, after, or during any enforcement of the Borrowers debts and/or obligations under this Trust;

g. The Lender can, without the consent or approval of the Guarantor, modify and/or amend the Interest Rate, the Principal Amount and any other term of the Trust or any obligation secured under this Trust. Furthermore, any amendment or modification of the Trust will not release or lessen the liability of the Guarantor;

h. The Guarantor will be bound and subject to any and all changes, modifications, variations, and amendments made to this Trust, regardless of whether such changes were made with or without the consent or approval of the Guarantor;

i. The Guarantor has read this Section and is aware of and fully agrees with its terms and in particular, the terms of this Section.

j. The Lender will serve notice to the Guarantor and any notice will be provided in same manner as provided in the Notice Section as outlines in this Trust.

## DEFAULT AND REMEDIES

**15. DEFAULT.** The Borrower will be considered in default under the terms of this Trust if any of the following conditions are met:

a.  The Borrower defaults on Master Factoring and Security Agreement or Future Receivable Sales Agreement.

b. The Borrower fails to perform or comply with any of the terms and conditions or any obligations or responsibilities due under this Trust.

c. The Borrower has given or made, at any time during the loan process, any materially false, misleading, or inaccurate information or statements to the Lender or any other party under this Trust in connection with the loan.

d. If any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Trust.

e. If default occurs under any other lien or encumbrance existing against the Property;

f. The Borrower abandons or fails to occupy the Property.

g. The Property or any material part of the Property is expropriated.

**16. ACCELERATION.** If at any time the Borrower should be in default under this Trust, the Lender must give notice to the Borrower. The notice must specify: (a) the default; (b) the action required to cure the default (if allowable); (c) a date, not less than 30 days from the date of the notice, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Trust and sale of the Property. If the default is not curable and/or if the default is not cured on or before the date specified in the notice, the Lender at its option may require immediate payment in full of all sums, including the Principal Amount, interest, and all other amounts secured by this Trust. If the default is cured, the Trust will be reinstated. If the default is not cured, the Lender may invoke the power of sale and begin foreclosure proceedings.

The Lender will at all times retain the right to require immediate payment in full in the event of default. Any forbearance on the part of the Lender upon default, which includes but is not limited to acceptance of late payment, acceptance of payment from third parties, or acceptance of payments less than the amount due, will not constitute a waiver to enforce acceleration on default.

**17. PROTECTION OF LENDER'S INTEREST.** If at any time the Borrower fails to perform the covenants and agreements under this Trust, or if there is a legal proceeding that significantly affects the Lender's interest in the Property, or if the Borrower has abandoned the Property, then the Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property and/or rights under this Trust, which includes, but is not limited to:

a. Paying any sums secured by a lien which has priority over this Trust;

b. Appearing in court;

c. Paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Trust; and

d. Paying for reasonable costs to repair and maintain the Property.

The Lender will at all times retain the right to take action under this Section. However, the Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that the Lender will not incur any liability for not taking any or all actions to perform such tasks. Furthermore, any amounts paid by the Lender will become additional debt of the Borrower secured by this Trust.

**18. POWER OF SALE.** If at any time the Borrower is in default under this Trust, the Lender will have the right and authority to foreclose and force the sale of the Property without any judicial proceeding. Any delay in the exercising of this right will not constitute a waiver to

exercise this right at a later date should the Borrower remain in default or subsequently default again in the future.

**19. REMEDIES.** The Lender will have the right to invoke all remedies permitted under Applicable Law, whether or not such remedies are expressly granted in this Trust, including but not limited to any foreclosure proceedings.

If the Lender invokes the power of sale, the Trustee will execute a written notice of the occurrence of an event of default and of the Lender's decision to sell the Property. The Lender or Trustee will mail copies of the notice to the Borrower and Guarantor and will also give public notice of sale in the manner provided by Applicable Law. After the time required by Applicable Law, the Trustee will sell the Property at a public auction to the highest bidder at the time and place and under the terms designated by the Trustee in the notice of sale. The Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Furthermore, the Lender or its designee may purchase the Property at any sale.

## MISCELLANEOUS TERMS

**20. GOVERNING LAW.** This Trust will be construed in accordance with the laws of the state of Nebraska ("Applicable Law"). Applicable Law will include all controlling applicable federal, state and local statutes. All rights and obligations under this Trust are subject to any requirements and limitations of Applicable Law.

**21. SEVERABILITY.** If any portion of this Trust will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Trust is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

**22. JOINT SIGNATURES.** If the Borrower is more than one person or legal entity, each Borrower who signs this Trust will be jointly and severally bound to comply with all the obligations and liabilities of the other Borrower(s).

**23. STATUTORY PROVISIONS.** The provisions contained in this Trust are additional and supplemental, to the extent permitted by law, to the provisions set out in the Applicable Law as they relate to trusts.

**24. SUBSTITUTE TRUSTEE.** The Lender may, at its option, from time to time appoint a successor Trustee by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument will contain the name of the original Lender, Trustee, and Borrower, the book and page where this Trust is recorded and the name and address if the successor Trustee. Without conveyance of the Property, the successor trustee will succeed to all the title, powers and duties of the Trustee.

**25. NOTICE.** All notice given by either party in connection with this Trust must be in writing. Notice will be considered sufficient when mailed by first class or certified mail to the address of the recipient. The recipient's address will be the property address as stated under this Trust unless another address has been designated. If there is a change of address by any party, that party must promptly notify all parties under this Trust of the change of address. Any notice will be considered effective on the same day that it was sent, unless the day falls on a national holiday, Saturday, or Sunday, in which case, the next business day will be considered as the day of receipt.

**IN WITNESS WHEREOF** this Trust has been executed by the Borrower and Guarantor in the manner prescribed by law as of January 25, 2019 as stated above.

**Borrower:**

By: _____     Date: 1/25/19
       Brian Podwinski

By: _____     Date: 1/25/19
       Amanda Podwinski

**[Notary Acknowledgment to Follow]**

**Borrower Acknowledgement**

STATE OF NEBRASKA    )
                           ) SS.
COUNTY OF LANCASTER)

On January 25, 2019 before me, a Notary in and for the State of Nebraska, personally appeared Brian Podwinski and Amanda Podwinski, husband and wife, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signatures on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_R. Kent Radke_ (Notary Seal)
Notary Public

GENERAL NOTARY - State of Nebraska
R. KENT RADKE
My Comm. Exp. July 14, 2019

My commission expires

**Guarantor**

Blue Blood Brewing Company, Inc., a Nebraska
corporation, Guarantor

By _____     Date _____ 1/25/19 _____
  Brian Podwinski, Manager~~Manager~~ President


[Notary Acknowledgment to Follow]

## Guarantor Acknowledgement

STATE OF NEBRASKA    )
                   ) SS
COUNTY OF LANCASTER )

On January 25, 2019 personally appeared Brian Podwinski, President of Blue Blood Brewing Company, Inc., a Nebraska corporation, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Notary Seal)
Notary Public

GENERAL NOTARY - State of Nebraska
R. KENT BACKE
My Comm. Exp. July 14, 2019

My commission expires

EXHIBIT __E__

```
Inst # 2018047468  Fri Nov 30 14:25:06 CST 2018
Filing Fee: $10.00                        opcook
Lancaster County, NE Assessor/Register of Deeds Office   CONSLN
                                          Pages 1
```

After recording return to:
Seacrest & Kalkowski, PC, LLO
1128 Lincoln Mall, Suite 105
Lincoln, NE  68508

### CONSTRUCTION LIEN

1.  The real estate subject to this lien is: Lot 4, Block 3, South Ridge Acres Addition, Lancaster County, Nebraska.

2.  The person against whose interest in the real estate the lien is claimed is:  Brian Podwinski and Amanda Podwinski

3.  The name and address of the Claimant is: Ironwood Builders, LLC, 1220 Infinity Court, Lincoln, NE 68512.

4.  The name and address of the person with whom the Claimant contracted with is: Brian Podwinski and Amanda Podwinski, 15600 S. 76th Street, Hickman, NE 68430.

5.  A general description of the Claimant's services performed, or to be performed, or materials furnished, or to be furnished for the improvement and the contract price are: new home construction with a contract price of $630,609.41.

6.  The amount unpaid, whether due or not, to the Claimant for the services or materials is: $46,509.41.

7.  The time the last services or materials were furnished was August 3, 2018.

Dated: November 30, 2018.

                                   **IRONWOOD BUILDERS, LLC,** a Nebraska
                                   limited liability company

                                   By: _____
                                        Joseph Steinbach, Member

STATE OF NEBRASKA          )
                           ) ss.
COUNTY OF LANCASTER        )

    The foregoing instrument was acknowledged before me this 30th day of November, 2018 by Joseph Steinbach, as Member of Ironwood Builders, LLC, a Nebraska limited liability company, on behalf of the limited liability company.

    ```
    GENERAL NOTARY - State of Nebraska
    BRITTANY N. WAGNER
    My Comm. Exp. February 27, 2021
    ```
                                   _____
                                   Notary Public

EXHIBIT __E__

**LANCASTER COUNTY ASSESSOR / REGISTER OF DEEDS**

| QuickRef ID | Owner | Property Address | 2019 Assessed Value |
|---|---|---|---|
| R407235 | PODWINSKI, BRIAN & AMANDA | 15600 S 76TH ST, ROCA, NE 68430 | $638,800 |

## 2019 GENERAL INFORMATION

| | |
|---|---|
| Property Status | A-Active |
| Property Type | Real Property |
| Property Class | Residential Improved |
| Legal Description | SOUTH RIDGE ACRES ADDITION, BLOCK 3, Lot 4 |
| Neighborhood | South Ridge Acres |
| Property ID | 15-15-403-004-000 |
| Taxing Unit Group | 0068 |

## 2019 VALUE INFORMATION

| | |
|---|---|
| Total Non-Ag Assessed | $638,800 |
| Total Ag Sp Assessed | $0 |

**PROPERTY PHOTO**



1515400004000 11/30/2018

## 2019 OWNER INFORMATION

| | |
|---|---|
| Owner Name | PODWINSKI, BRIAN & AMANDA |
| Mailing Address | 15600 S 76TH ST ROCA, NE 68430-4376 |
| Exemptions | - |
| Percent Ownership | 100% |

## 2019 RESIDENTIAL IMPROVEMENTS

⯆ Expand/Collapse All

| Building #1 | Building Type | Improvement Type | Year Built | Total Living Area |
|---|---|---|---|---|
| | Single-family Residence | 1 Story | 2017 | 2240 |

| ID | SECTION DESCRIPTION | YEAR BUILT | AREA |
|---|---|---|---|
| 1 | Main Floor Living Area | - | 2,240 |

| ID | COMPONENT DESCRIPTION | UNITS | PERCENT |
|---|---|---|---|
| 1 | Frame, Siding | - | 95% |
| 2 | Veneer, Masonry | - | 5% |
| 3 | Composition Shingle | - | 100% |
| 4 | Warmed & Cooled Air | - | 100% |
| 5 | Automatic Floor Cover Allowance | - | - |
| 6 | Plumbing Fixtures (#) | 17 | - |
| 7 | Single 1-Story Fireplace (#) | 1 | - |
| 8 | Total Basement Area (SF) | 2664 | - |
| 9 | Partition Finish Area (SF) | 2450 | - |
| 10 | Attached Garage (SF) | 948 | - |
| 11 | Open Slab Porch (SF) | 342 | - |
| 12 | Slab Porch (SF) with Roof | 342 | - |
| 13 | Slab Porch (SF) with Roof | 112 | - |
| 14 | Lawn Sprinklers (SF) | 5000 | - |

## ASSESSED VALUE HISTORY

| YEAR | LAND | BUILDING | TOTAL |
|---|---|---|---|
| 2018 | $67,500 | $43,300 | $110,800 |

## SALES HISTORY

| SALE DATE | SELLER | BUYER | INSTR # | Sale Price |
|---|---|---|---|---|
| 8/31/2017 | BAADE PROPERTY LLC | PODWINSKI, BRIAN & AMANDA | 2017045490 | $122,500 |

EXHIBIT _F_

DISCLAIMER

TO ACCESS the ASSESSOR/REGISTER of DEEDS GENERAL INFORMATION PAGE, click on the Lancaster County logo. DISCLAIMER Every effort has been made to offer the most current and correct information possible on these pages. The information included on these pages has been compiled by County staff from a variety of sources, and is subject to change without notice. The County Assessor makes no warranties or representations whatsoever regarding the quality, content, completeness, accuracy or adequacy of such information and data. The County Assessor reserves the right to make changes at any time without notice. By using this application, you assume all risks arising out of or associated with access to these pages, including but not limited to risks of damage to your computer, peripherals, software and data from any virus, software, file or other cause associated with access to this application. The County Assessor shall not be liable for any damages whatsoever arising out of any cause relating to use of this application, including but not limited to mistakes, omissions, deletions, errors, or defects in any information contained in these pages, or any failure to receive or delay in receiving information.