IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: | BK No. 19-41937-TLS |
| Brian C. Podwinski, | **Joint Preliminary Pretrial Statement** |
| Ch. 7 Debtor. | |

Creditors and interested parties Charles S. Tomek ("Tomek") and Tadd Delozier ("Delozier") and Debtor Brian C. Podwinski ("Podwinski") (collectively "the parties") submit this joint preliminary pretrial statement in compliance with the Court's Preliminary Pretrial Order entered July 20, 2020.[1]

1. A summary of Tomek and Delozier's theory of the case and Podwinski's defense or objections.

    A. Creditor's Theory of the Case

    i. Tomek and Delozier have two motions before the Court: (a) their amended motion to extend time for filing objection to dischargeability and adversary action;[2] and (b) their motion to approve compromise and enforce settlement.[3]

    ii. The motion to extend time asserts Tomek and Delozier are entitled to an extension of the discharge deadline previously established by the Court for the following reasons:

    a. The parties had an enforceable settlement agreement that, among other things, Tomek and Delozier's claims against Podwinski would be determined non-dischargeable by the Court;

    b. Promissory estoppel bars Podwinski from opposing an extension of the discharge deadline;

---

[1] *See* ECF 60.
[2] ECF 48.
[3] ECF 52

      c.    Waiver and forfeiture bar Podwinski from opposing an extension of the discharge deadline;

      d.    Equitable tolling bars Podwinski from opposing an extension of the discharge deadline;

      e.    Equitable estoppel bars Podwinski from opposing an extension of the discharge deadline.

iii.    The motion to approve compromise and enforce settlement asserts the Court should approve and enforce the parties' settlement agreement for the following reasons:

      a.    The parties had an enforceable settlement agreement that was reduced to writing, contained all material terms of the parties' approximately 5-month settlement negotiations, and was approved in writing by the parties and their counsel;

      b.    Promissory estoppel bars Podwinski from opposing approval and enforcement of the parties' settlement agreement;

      c.    Waiver and forfeiture bar Podwinski from opposing approval and enforcement of the parties' settlement agreement;

      d.    Equitable tolling bars Podwinski from opposing approval and enforcement of the parties' settlement agreement;

      e.    Equitable estoppel bars Podwinski from opposing approval and enforcement of the parties' settlement agreement.

iv.    The parties engaged in a series of settlement negotiations, primarily by e-mail, from approximately January 24, 2020 through approximately June 24, 2020.

v.    The parties' settlement negotiations focused on whether Tomek and Delozier's claims against Podwinski would be determined non-dischargeable and repayment of those claims over time through a voluntary payment plan.

vi.    On April 22, 2020, Tomek and Delozier reduced to writing an outline compiling the settlement terms the parties discussed during negotiations

and submitted the compilation to Podwinski through his counsel for approval.

vii. On May 14, 2020, Podwinski's counsel e-mailed Tomek and Delozier's counsel stating that he was still waiting on final approval of the compiled settlement terms, but believed "the terms have all been agreed to through months of emails but I want to get his approval prior to telling you that we have a deal and let's do a stip."

viii. On June 16, 2020, Podwinski's counsel e-mailed Tomek and Delozier's counsel stating: "Sounds like Brian's good with the terms as outlined . . . ." and mentioned "just a few considerations/suggestions for stip"

ix. The "considerations/suggestions" Podwinski requested involved a repayment start date, Podwinski's confirmation that he had obtained a life insurance policy under the outlined settlement terms, and transfer of any shares held by Tomek and Delozier in Barrel Aged Labs, LLC back to Podwinski "after all payments contemplated are made."

x. Regarding these "considerations/suggestions":
 a. The parties agreed by e-mail on June 17, 2020 to a transfer of any shares held by Tomek and Delozier in Barrel Aged Labs, LLC back to Podwinski after all settlement payments contemplated were made, with an additional $750 payment to Delozier.
 b. The parties agreed by e-mail on June 17, 2020 that Podwinski would provide confirmation that he had obtained a life insurance policy under the outlined settlement terms.
 c. The parties agreed by e-mail on June 18, 2020 to a repayment start date of November 1, 2020.

xi. On June 24, 2020 Podwinski's counsel e-mailed Tomek and Delozier's counsel and requested confirmation the parties were tentatively settled.

xii. Tomek and Delozier's counsel replied by e-mail on June 24, 2020, confirmed the parties were tentatively settled, and stated the parties should inform the court of their settlement.

3

    xiii.      On June 24, 2020, Podwinski's counsel sent an e-mail to Tomek and Delozier's counsel stating Podwinski was no longer interested in settling the matter with Delozier or Tomek.

  B.  A summary of Debtor Podwinski's defense or objections.

    i.      Debtor admits that he consented to an initial extension of the deadline for Creditors to file a complaint objecting to discharge, which extended the deadline from March 23, 2020 to June 21, 2020.

    ii.      Debtor admits this extension was to allow the parties to discuss a possible settlement of Creditors' intention to file a complaint objecting to discharge.

    iii.      Debtor admits he and Creditors had several discussions related to settlement, however, he disputes Creditors' assertion that a full and complete settlement was arrived at between the parties.

    iv.      Debtor would state that Creditors' "reduction to writing" of the terms was a list prepared by Creditors' counsel of terms that had been discussed.  No drafted agreement was ever prepared by either Creditors' attorneys or Debtor's counsel.  Neither party signed any agreement and it was not a fully formed agreement at the time.

    v.      Debtor would state that the parties were still negotiating terms of settlement until and through Creditors' extended deadline to file their complaint on June 21, 2020.

    vi.      Creditors argue in their motion that Debtor's statement concerning terms being acceptable, with some considerations/suggestions for actual settlement induced Creditors' counsel to refrain from protecting Creditors' interest by filing either an additional motion to extend deadline, or filing a complaint.  However, deadlines and the filing of a complaint, or abandonment thereof was never a term discussed by the parties.  In addition, in an email dated June 17, 2020, counsel for Creditors informed Debtor's counsel the deadline to file complaint was in July, stating "Our July discharge objection deadline is looming and

        Chuck and Tadd want this done. I'm sure Brian wants that too." Debtor's counsel assumed this was accurate since it was Creditors' deadline to keep track of.

vii. To now state that the missed deadline was purposeful is disingenuous and an outright misrepresentation to this Court.

viii. As of June 19, 2020, Creditors and Debtor were still negotiating possible repayment terms and possible repercussions in the event of default. Debtor continued discussions upon the mistaken assertion by Creditors' counsel that the deadline to object to discharge was in July, but was not aware that was a false assertion.

ix. On June 24, 2020, Debtor's counsel and Creditors' counsel discussed the status of settlement in the context of an upcoming hearing set for later that week concerning Debtor's Motion to Avoid Lien of Tomek. Creditors' counsel indicated "Based on my discussions with my clients this afternoon, I believe we are **tentatively** settled." At this time, no drafted settlement agreement had been proposed and no particular language reviewed other than general terms.

x. Debtor discovered that Creditors had missed their deadline on June 24, 2020 and promptly notified Creditors' counsel that Debtor did not desire to continue settlement negotiations as a result of Creditors' abandonment of their potential claim(s).

xi. The deadline imposed by Rule 4007(c) is strictly construed and permits an extension of time only when the request is filed before the time has expired. *See e.g.*:

    a. *Grand v. Harbaugh* (In re Harbaugh), 301 BR 317 (8th Cir. BAP 2003);

    b. *In re Earlywine*, 2016 Bankr. LEXIS 1832, No. 15-01359 (Bankr. S.D. Iowa, April 25, 2016);

    c. *Bel Fury Inv. Group, LLC v. Kacin*, (In re Kacin), 2010 Bankr. LEXIS 1868, No. 09-82566 (Bankr. D. Neb. June 8, 2010)*;*

5

    d.    *Hruza v. Holt*, (In re Holt), 1997 Bankr. LEXIS 2415, No. 96-82049 (Bankr. D. Neb. May 1, 1997);

    e.    *In re Julien*, 2012 Bankr. LEXIS 2764, No. 10-82442 (Bankr. D. Neb. June 18, 2012);

    f.    *Mitchell v. Begelow*, (In re Mitchell), 2008 Bankr. LEXIS 1, No. 05-05637 (Bankr. N. D. Iowa January 3, 2008);

xii.    No impairment prevented Creditors from preserving their ability to file a Complaint or an additional extension of the deadline under Rule 4007(c). No negotiation was had as to Creditors impairing their ability to file a timely complaint or filing a timely request to extend deadline.

xiii.    Many courts have found that there is no equitable exception, or it is a very limited tolling and which requires extraordinary circumstances to deviate from the strictly enforced deadline under Rule 4007(c). *See e.g.*,:

    a.    *Anwar v. Johnnson*, 720 F. 3d. 1183 (9th Cir, 2013);

    b.    *Seyedan v. Beauty Illusions, Inc.* (In re Kanaan), 217 Bankr. LEXIS 295, No 16-10443 (Bankr. C.D. Cal. February 1, 2017);

    c.    *Martin v. Thompson* (In re Thompson), 2018 Bankr. LEXIS 2429, No. 18-1018 (Bankr. E.D. Tenn. August 15, 2018);

    d.    *United Cmty. Bank v. Harper*, (In re Harper), 489 B.R. 251 (Bankr. N.D. Ga. 2013);

    e.    *Deere & Co. v. Grabowski*, (In re Grabowski), 2016 Bankr. LEXIS 2015, No. 15-40381 (Bankr. S.D. Ill. May 16, 2016);

    f.    *In re Bressler*, 600 B.R. 739 (Bankr. S.D. N.Y. 2019).

xiv.    Creditors can point to no extraordinary circumstance that prevent them from preserving their pursuit respect to dischargeability.

xv.    The goals of the Bankruptcy Code concerning Debtor's fresh start place the burden of diligence upon Creditors under the very unambiguous Rule 4007(c).

xvi.    As of June 19, 2020, the parties were still negotiating possible repayment terms and repercussions in the event of default. Debtor

|     |     |
| --- | --- |
|     | continued to act in good faith to find a settlement and received no response to some of his concerns until after the deadline on the 21st of June. |
| xvii. | Because as of June 21, 2020, Creditors' time to file either a complaint objecting to discharge or another extension of that deadline, lapsed, there was no matter in controversy of which to settle upon, irrespective of any prior negotiations between the parties. |
| xviii. | In addition to the uncertainty of counsel for Creditors' assertion that "we are **tentatively** settled," as of June 21, 2020, and due to various options proposed back and forth, it is anybody's guess what the actual term Creditors agreed to given the fact that Debtor never received an actual legally binding document to which he was asked to bind himself. Debtor was still concerned with the following items that, to the best of his belief were not agreed upon by the parties: |
|     | a.  Term of payback was unclear and Creditors' desire for a shorter term with balloon payment was not yet determined. Repayment start date was still an open question; |
|     | b.  Payment start date; |
|     | c.  Cure provision affording flexibility due to some large tax debt contemplated to be owed by Debtor to IRS. |
| xix. | Debtor has never and would never admit to the debts owed to Creditors as being non-dischargeable for any reason under 11 U.S.C. §523. This was indicated early on and Debtor remained consistent in the assertion that he did not commit any acts that would lead a trier of fact to determine the debts were nondischargeable if a trial were had. Instead, even though the claims by Creditors were for a substantial amount of money, Debtor did not wish to risk the possibility of losing at trial, incurring more expenses for his own attorney and risk incurring more expenses of counsel for Creditors. Debtor was and still is in a bad |

   financial position and could not and cannot afford the costs to defend himself in an adversary.

 xx. As indicated in Debtor's other objection to Creditors' motion, many courts have found that there is either no equitable exception, or is very limited which requires extraordinary circumstances to toll or deviate from the deadline set by Rule 4007(c).

 xxi. Nothing in the settlement negotiations or otherwise caused a situation where Creditors could not preserve their claims by filing either a motion to extend deadline or a complaint to determine dischargeability. Debtor and his counsel never misled Creditors or their counsel about deadlines. Rather, Creditors' counsel misled Debtor and his counsel.

2. A statement addressing whether the proceeding is core or non-core.
 A. This proceeding is a core proceeding:
  i. Under 11 U.S.C. § 157(b)(2)(A) because it concerns the administration of the bankruptcy estate;
  ii. Under 11 11 U.S.C. § 157(b)(2)(I) because it involves a determination as to the dischargeability of particular debts;
  iii. Under 11 U.S.C. § 157(b)(2)(J) because it involves objections to discharges;
  iv. Under 11 U.S.C. § 157(b)(2)(K) because it determines the validity, extent, or priority of liens.

3. A statement addressing whether the parties consent to entry of final orders or judgments by a bankruptcy judge
 A. The parties do consent to entry of final orders or judgments by a bankruptcy judge in these matters.

4. A statement addressing whether a jury trial has been properly and timely demanded.
 A. No party demands a jury trial of these matters.

5. A summary of the uncontroverted facts.
 A. Venue is proper under 28 USC §1409(a).

- B. Creditor's action is a proper adversary proceeding Fed. R. Bankr. P. 7001(6) because it is an action related to a proceeding to determine dischargeability of debt.

6. A summary of the controverted facts and unresolved legal issues.
   - A. The parties expect all facts not identified as uncontroverted in the preceding paragraphs will be controverted.
   - B. A summary of controverted facts will likely include:
     - i. Whether the parties' communications and conduct constituted an enforceable settlement agreement.
       - a. Whether Creditors can now attempt to enforce specific terms of a settlement negotiation.
     - ii. Whether the parties' communications and conduct created a promissory estoppel against Podwinski's position.
       - a. Whether promissory estoppel is available to Creditors despite Fed. R. Bankr. P. 4007 and case law.
     - iii. Whether the parties' communications and conduct created a waiver and forfeiture against Podwinski's position.
       - a. Whether waiver and forfeiture is available to Creditors despite Fed. R. Bankr. P. 4007 and case law.
     - iv. Whether the parties' communications and conduct created an equitable tolling against Podwinski's position.
       - a. Whether equitable tolling is available to Creditors despite Fed. R. Bankr. P. 4007 and case law.
     - v. Whether the parties' communications and conduct created an equitable estoppel against Podwinski's position.
       - a. Whether Equitable Estoppel is available to Creditors despite Fed. R. Bankr. P. 4007 and case law

7. A summary of the evidence to be relied upon to establish each of the controverted facts.
   - A. Creditor's Witnesses:

      i. John Lentz;
     ii. Brian Podwinski;
    iii. Michael W. Milone;
    iv. Charles Tomek;
     v. Tadd Delozier;
    vi. Any witnesses required for purposes of impeachment or rebuttal.

Creditor reserves the right to amend or add witnesses.

A. Debtor's Witnesses:
   a. Brian C. Podwinski
   b. Michael W. Milone
   c. David J. Koukol
   d. Debtor reserves the right to amend or add witnesses.

B. Exhibits:
   1. Exhibits of Creditor:
      a. The e-mails between the parties' counsel and other communications from approximately January 24, 2020 to July 1, 2020.
      b. The parties' compilation of settlement terms dated April 22, 2020.
   2. Exhibits of Debtor:
      a. Emails from Michael W. Milone to counsel for Debtor.
      b. Debtor reserves the right to amend or add Exhibits.

8. A statement as to which exhibits are admitted without objections.

  A. None at this time, as documents have not yet been exchanged by counsel.

9. A statement of the estimated number of hours required for trial.

   a. The parties estimate trial will take approximately 4 to 8 hours.

10. A statement of the date by which motions for summary judgment, if any, shall be filed.

   a. 30 days before the date set for trial on this matter.

11. A statement of the date, after the deadline for filing motions for summary judgment, by which counsel will be prepared for trial.

   a. The parties anticipate counsel will be prepared for trial by:

10

January 1, 2021.

12. A statement of the date by which parties will confer on scheduling a mediation.

    a. The parties will confer on scheduling a mediation by October 1, 2020.

Dated: August 31, 2020.

*Approved as to form and content by:*

| | |
|---|---|
| Charles S. Tomek and Tadd Delozier, Creditors and Interested Parties. | Brian C. Podwinski Debtor. |

By: /s/ David J. Koukol
    Michael W. Milone #25800
    David J. Koukol #18102
    KOUKOL & JOHNSON, LLC
    12020 Shamrock Plz., Suite 333
    Omaha, NE 68154
    Email: mmilone@westomahalaw.com
    Phone: (402) 934-9499, ext. 211
    Fax: (402) 934-7730
    Counsel for Tomek and Delozier

By: /s/ John A. Lentz
    John A. Lentz #24420
    LEPANT & LENTZ, PC, LLO
    650 J Street, Suite215B
    Email: john@lepantandlentz.com
    Phone: (402) 421-9676
    Counsel for Debtor

## Certificate of Service

I hereby certify that on August 31, 2020, I electronically filed the foregoing and this certificate of service with the Clerk of the Bankruptcy Court using the CM/ECF system, which sent notification of such filings to the following: Chapter 7 Trustee James Overcash; U.S. Trustee Jerry Jensen; Debtor's attorney John A. Lentz; and all parties registered to use the CM/ECF system. I further certify that I sent notice of this filing by first class mail to: none.

                                                                               /s/ David J. Koukol